**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MICHAEL L. SHWARTZ**                                                                    **PLAINTIFF**

**VS.**                                                  **CIVIL ACTION NO. 4:16-cv-00115-MPM-JMV**

**HICHAM KHODR**                                                                      **DEFENDANT**

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS RESPONSE IN
OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

---

COMES NOW, Plaintiff MICHAEL L. SHWARTZ (hereinafter "Shwartz"), by and

through the undersigned counsel, in the above styled cause and files this his Memorandum in

Support of his Response in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss.

In opposition thereto, Plaintiff would show as follows:

## I.      FACTUAL BACKGROUND

This suit is based on fraud and misrepresentations related to a business transaction

between Shwartz and Khodr, as well as misrepresentations contained within a License

Agreement ("License"), which was a part of the documentation of the deal agreed to between

Shwartz and Khodr.  Shwartz owned 100% of three assets. Shwartz individually owned real

estate, including a building and its property housing the original Camellia Grill location at 626

South Carrollton Ave., New Orleans, Louisiana. Through Camellia Grill, Inc., Shwartz owned a

restaurant business management corporation through which he operated the Camellia Grill.

Through Camellia Grill Holdings, Inc. ("CGH"), Shwartz owned various intellectual property

("IP") comprising the Camellia Grill brand.

1

This lawsuit centers around two negotiations between Khodr and Shwartz, both being held in Grenada, Mississippi, and in which meetings they discussed and then finalized a business transaction. Khodr, along with the parties' mutual CPA, David Kushner, met with Shwartz on June 23, 2006 to discuss the deal, and the terms were generally agreed upon, i.e. purchase prices for the building from Shwartz individually and a license of the IP rights from CGH.

A few weeks later, on July 11, 2006, Khodr, along with Kushner and this time Shwartz's attorney Mark Stein, returned to Mississippi to again meet with Shwartz, to finalize the details of the deal centered around a twelve point concerns list which Shwartz personally drafted. The details agreed upon at this second Grenada negotiation included the territory included under the License, contractual default and termination language, and most especially that CGH would always retain ownership of the licensed basket of "Marks" under the License. At that second meeting, the agreement remained solely an outright purchase of building from Shwartz individually and a license of the IP rights from CGH. (See the outlines of agreement points and notes taken during this meeting, attached to the First Amended Complaint, as Exhibits "A" and "C.)

Notably, at neither of these Mississippi meetings nor thereafter did Shwartz offer to outright sell any intellectual property associated with Camellia Grill, nor did Khodr ever request such an outright sale. During these two meetings in Mississippi, Khodr and his representatives repeatedly represented that Khodr was to receive a license of the IP rights and that Shwartz's corporation, CGH, would remain the sole owner of the IP. During these two meetings in Mississippi, Khodr had not yet formed any of the companies which he would use later to purchase and license the assets, including The Grill Holdings, LLC, ("TGH"), his company

formed to license the IP.

Although Khodr's misrepresentations in the Grenada negotiations related to the ownership of the IP, Shwartz would not have sold the building which he owned individually or the equipment and merchandise which he owned through another company had he known that Khodr's true intentions were to covertly obtain permanent ownership of the IP using any of the eventual contracts as Khodr's ownership of the IP was never offered by Shwartz or requested by Khodr.

On July 20, 2006, several days after the final Grenada negotiation had established the majority of the License's outlined agreed upon terms, mutual CPA Kushner suggested bifurcating the real estate portion of the deal in order to segregate the movable furniture, fixtures, and other equipment ("FF&E") from the real property for alleged tax reasons benefitting solely Khodr. *See,* July 20, 2006 Linda Cross email to David Bernstein, attached as Exhibit "A." However, Khodr insisted on taking title to the real estate in advance of the proposed License Agreement's signing, and as a result thereof, both Khodr's general counsel David Bernstein and real estate counsel Randy Opotowsky became concerned about Khodr taking possession of the building without the License for the IP in place. *See,* August 3, 2006 Opotowsky email, attached as Exhibit "B." These concerns led to Khodr requesting that Shwartz include the word "trademarks" in the Bill of Sale for "tangible personal property," which transferred the FF&E, and this decision to include the word "trademarks" was alleged to Shwartz to represent a temporary stopgap ("placeholder") of protection for Khodr's real estate until the License was in place to grant the use of the IP. *See*, January 22, 2015 Deposition of Randy Opotowsky, pp. 41-43, attached as Exhibit "C." As Shwartz has testified, he agreed to the inclusion of the word

"trademarks" within the Bill of Sale for "tangible personal property" because the real estate contained boxes of novelties, menus and certain signage comprised of CGH's registered marks and that Khodr's concerns were in relevance to these tangible objects, not some covert agenda to be invoked at a much later date in order to obtain the permanent transfer of the Marks *See*, January 7, 2015 Deposition of Michael L. Shwartz, pp. 115-116, attached as Exhibit "D."

This fraud and misrepresentation suit additionally involves representations Khodr made in the negotiated License Agreement for the IP, specifically:

**1.1 Licensor [CGH] owns the intellectual property, trademarks and service marks ("Marks") described on Exhibit 1.1 annexed here to.**

1.2 Licensee [Khodr's TGH] desires to obtain the exclusive license to the Marks …

1.3 The Parties enter into this Agreement to state the terms and conditions upon which Licensee may open, operate, franchise and/or sublicense restaurants bearing the Marks..

\*\*\*

3. Licensor grants to Licensee for the duration of this Agreement an exclusive license to use the Marks…

\*\*\*

5. **OWNERSHIP. Licensee acknowledges and agrees that all of Licensor's right, title and interest in and to the Marks shall remain the property of Licensor.** …

6. USE OF TRADEMARKS. Licensee will: (1) use the Marks only as set forth herein…

\*\*\*

10. LICENSEE OBLIGATIONS.

10.1 Licensee will not use the Marks, for purposes other than pursuant to this Agreement.

\*\*\*

10.3 **Licensee will not attack the title or any rights of Licensor in and to the Marks,…**

(*See*, License Agreement, attached as Exhibit "I" to First Amended Complaint) (emphasis added).

4

Shortly after the closing of the deal, TGH began defaulting under the License Agreement. Eventually CGH terminated the license agreement by written notice to Khodr, but as Khodr refused to cease the use of the licensed Marks per the License's terms, CGH/Shwartz was forced to sue Khodr in Louisiana State Court in order to judicially enforce the contract's termination, and which termination was ultimately granted by summary judgment on May 25, 2012. *Neither Shwartz nor Khodr were individually named in this suit.* TGH appealed this judgment to the Louisiana Fourth Circuit Court of Appeals, which affirmed the declaratory judgment. Khodr filled a Writ application to the Louisiana Supreme Court, which was denied on November 1, 2013.

On May 20, 2013, after the Louisiana Fourth Circuit upheld the trial court's License termination, but before the Louisiana Supreme Court denied writs, Erika Gates, a historical preservationist, nominated the Camellia Grill for historic status with the Historic District Landmarks Commission ("HDLC"), which would prohibit the removal of the Marks. CGH and its counsel learned of this endeavor on June 11, 2013. CGH subsequently filed suit in federal court against both, TGH, as well as the City of New Orleans, in order to enjoin the nomination process and to preserve CGH's rights in and to the Marks. On August 16, 2013, CGH's suit was dismissed without prejudice by the District Court on the grounds of prematurity.  In TGH's August 6, 2013, reply brief concerning HDLC matter, for the first time it was argued that the Bill of Sale for "tangible personal property" conveyed some level of ownership of the IP. *Neither Shwartz nor Khodr were individually named parties to this suit, and no claims of fraud were asserted.*

5

At no point during these five years in Louisiana state court litigation did any party assert ownership of the IP by Khodr, individually or through a corporation. Therefore, Shwartz did not make a claim of fraud, individually or through one of his companies. Shwartz first discovered that Khodr was asserting ownership of the IP through the brief filed on August 6, 2013 in the HDLC matter.[1]

On December 3, 2013, Khodr's company Uptown Grill, as the purchaser of the Bill of Sale, sued Shwartz, Camellia Grill, Inc., and CGH, the three named sellers on the Bill of Sale for "tangible personal property," in federal court demanding that the court enforce the Bill of Sale as a transfer of ownership of the Marks and declare Khodr as the owner of the Marks. No claim was made directly against Shwartz, individually, for any basis other than as being one of the named sellers of the Bill of Sale for "tangible personal property."

On March 27, 2014, CGH filed suit in Louisiana state court against TGH and a number of Khodr related companies for breach of contract damages and trademark infringement caused by the refusal to observe the contractual mandates to cease use of the licensed Marks immediately upon written notice of termination. Khodr was named individually in this petition, but only under a single business enterprise theory by his movement of monies between companies, in order to be able to collect damages against Khodr should he bankrupt the corporate entities. However, this suit was removed to federal court and consolidated with the action filed by TGH for declaratory relief.

Within his January 6, 2015, deposition testimony regarding his own federal suit, Khodr

---

[1] The May 20, 2013 letter, which Khodr asserts shows Shwartz's earliest knowledge of Khodr's claim of ownership outside the License Agreement does not support his argument. This letter simply references a Facebook reference to the word "owner," as well as other breaches of the License Agreement aside from alleged alternate ownership of the IP. This letter simply pointed out what had been agreed and acted upon by the parties through the License for seven years, that CGH/Shwartz was the owner of the IP. *See*, May 20, 2013 letter, attached as Exhibit "E."

asserted that his intent was to use the real property sale and Bill of Sale to permanently purchase the IP from Shwartz for the original unit in direct contravention to his statements made in 2006 during negotiations and within the License Agreement that the IP would remain CGH's exclusive asset. *See*, Deposition of Hicham Khodr, p. 54, attached as Exhibit "F." In this same deposition excerpt, Khodr also asserts that the original unit was already "bought" at the time the License was signed. However, Khodr signed the License two weeks after the real estate and Bill of Sale were executed. The License clearly states in section 1.3 that the License controls the use of the Marks in "restaurants bearing the Marks," this provision containing no exclusion of the original unit. *See*, Exhibit "I" to First Amended Complaint. Additionally, Khodr appointed Uptown Grill, the purchaser of the Bill of Sale, as a sublicensee under the License. As a result, it is incongruous at best to assert that Uptown Grill proprietarily acquired IP rights under one contract, yet that same corporation was made a sublicensee under a separate contract containing stipulations regarding CGH's ownership of the same Marks allegedly transferred in the Bill of Sale.

On July 10, 2015, the district judge ruled on Khodr's Motion for Summary Judgment and held that the Bill of Sale transferred the Marks to Khodr, not just for the Carrollton Avenue location, but for the entire territory of the United States. The district court also awarded Khodr the good will and trade dress associated with the brand and dismissed Shwartz's complaint with prejudice. Although the district court did interpret the Bill of Sale contract under conventional rules of contract construction and exclude parole evidence, the district court ***did not*** consider or address any claim of fraud or misrepresentation. Furthermore, the district court specifically stated that it did not consider the License Agreement, which contained much of the fraud

7

originally expressed to induce the sale of the real property and other assets. *See*, July 10, 2015 Order and Reasons, p. 15, attached as Exhibit "G." ("Having found that the plain terms of the Bill of Sale are clear and unambiguous, the Court cannot search for ambiguity in other places, including the License Agreement.").

On March 23, 2016, the Fifth Circuit Court of Appeals ruled that the Bill of Sale unambiguously sold the marks for the original unit to Uptown Grill, but reversed and remanded the specific issue of the scope of the Marks' transfer regarding ancillary units for further proceedings in the district court. A final judgment has not been issued, and this matter is currently pending before the Eastern District of Louisiana.

## II. <u>ARGUMENT</u>

### A. Standard of Review under Rule 12(b)(6)

Rule 12(b)(6) Motions to Dismiss should only be granted when "[t]aking the facts alleged in the complaint as true, if it appears certain that the plaintiff cannot prove ***any set of facts*** that would entitle it to the relief it seeks." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005), quoting *C.C. Port, Ltd. v. Davis–Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir.1995). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Generally, "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Id.*

### B. Shwartz's claims are not barred by res judicata or collateral estoppel.

Khodr attempts to mischaracterize the instant lawsuit as one centering on parol evidence and contractual issues, while entirely ignoring Shwartz's instant claims for fraud. It is this blatantly false assertion upon which Khodr attempts to build both his argument for res judicata

and collateral estoppel. However, this matter is upon the face of the Complaint, which must be accepted as true, a claim for fraud and other tortious activities steaming from this fraud. Shwartz is not requesting this Court to reinterpret the Bill of Sale, but rather is requesting that this Court consider the fraudulent activity surrounding the Licensing Agreement negotiations, which Shwartz did not discover until he became extensively involved in the consolidated lawsuit before the Eastern District of Louisiana. This issue of fraud now being raised by Shwartz is novel and is barred by neither res judicata nor collateral estoppel.

1. **Khodr has failed to establish the elements of res judicata in regard to Shwartz's fraud-based claims.**

In considering res judicata, the Fifth Circuit has outlined four elements must be met in order for the claim to bared: "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be *a final judgment on the merits*; and (4) *the same claim or cause of action must be involved in both cases*." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). However, "[t]he prohibition against splitting a cause of action and the rather Draconian remedy of barring the subsequently filed suit must be applied with discretion and flexibility." *Hayes v. Solomon*, 597 F.2d 958, 983 (5th Cir. 1979). In order for a res judicata claim to succeed, each of these four factors must be established, which Khodr has failed to accomplish.

a. **The case before the Eastern District of Louisiana has not received a final judgment on the merits.**

In discussing the "final judgment" element of res judicata, Khodr again incorrectly exclusively addresses the issue of the parol evidence while misconstruing the *currently pending* action before the Eastern District of Louisiana. Although on appeal the Fifth Circuit affirmed the

Eastern District of Louisiana's decision regarding ambiguity of the Bill of Sale and the ownership of the Camellia Grill trademarks at the Carrollton Avenue location, the Fifth Circuit reversed remanded the issue of ownership of those trademarks not associated with the Carrollton Avenue location, which is, in fact, a "merit" of the Eastern District of Louisiana suit. *See*, *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251 (5th Cir. 2016). Specifically, the full quote from the Fifth Circuit regarding the merits of the Eastern District of Louisiana case reads, "The merits of this dispute center on ownership of the trademarks at the Carrollton Avenue location ***and***, according to the district court, ***those associated with the other locations***." *Uptown Grill*, 817 F.3d at 257. Khodr conveniently omits the latter half of this sentence for purposes of his res judicata argument. *See*, Doc. 16, p.11.

However, Khodr simultaneously acknowledges in his Rule 12(b)(2) and Rule 12(b)(3) Motion to Dismiss, that "the Eastern District of Louisiana and the Fifth Circuit have adjudicated and ***continue to adjudicate whether Khodr's companies own the Marks***." Doc. 14, p. 21. He also admits in his Motion for Rule 11 Sanctions, "***the very issues set forth in Shwartz's Complaint*** are ***currently pending*** before the U.S. District Court for the Eastern District of Louisiana." Doc. 11, p. 1. While Shwartz wholly denies that the fraud issues in the instant suit bear any similarity to contractual issues before the Eastern District of Louisiana, the Defendant clearly contradicts himself on this issue. If, as Khodr claims, "the very issues set forth in Shwartz's Complaint are currently pending before the U.S. District Court for the Eastern District of Louisiana," how can there also be a final judgment on the merits on these same issues as Khodr suggests in his res judicata argument? *Compare* Doc. 11, p. 1 *with* Doc. 16, pp. 10-11.

As noted by Khodr, "[a] case pending appeal is res judicata and entitled to full faith and

credit **unless and until reversed on appeal**." *Fid. Standard Life Ins. Co. v. First Nat'l Bank & Trust Co.*, 510 F.2d 272, 273 (5th Cir.1975) (per curiam). However, the Eastern District of Louisiana is **NOT** pending appeal. It has been partially reversed and remanded by the Fifth Circuit with no final judgment on the merits issued to date. The Fifth Circuit has noted that "a judgment in the first suit is final for the purpose of res judicata '**so long as the judgment remains unmodified**.'") *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 468 (5th Cir. 2013) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 49 (1897)). As acknowledged by Khodr in his own Motion, this matter is continuing to be adjudicated. *See,* Doc. 14, p. 21. Thus, the Eastern District of Louisiana was modified and is not a final judgment on the merits for the purposes of res judicata.

### b. The instant claim and cause of action, fraud, has not been previously litigated.

Khord is correct in asserting that the ***admissibility of parol evidence in relation to contract interpretation*** has been previously addressed by the Eastern District of Louisiana and the Fifth Circuit; however, parol evidence is not the issue here. As clearly established by the Amended Complaint, Shwartz is not challenging the issue of parol evidence or the final judgment of the Fifth Circuit, but rather asserting fraud in both the Mississippi contract negotiations and licensing agreement, itself. As a result, these claims for fraud and the rights associated therewith have not been previously litigated at any point.

The crucial fourth element in the res judicata analysis is "whether the same claim or cause of action must be involved in both cases." *Oreck*, 560 F.3d at 401. Specifically, this element requires that "the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated." *Harrison v. Chandler-Sampson Ins., Inc.*, 891

So. 2d 224, 234 (Miss. 2005). In making this determination, Mississippi courts look to whether "[t]he primary right and duty asserted and the primary wrong complained of were the same in each action." *Id.* at 234–35, quoting *Walton v. Bourgeois*, 512 So. 2d 698, 702 (Miss. 1987).

A claim is not automatically barred by res judicata merely because it is related to a previously litigated set of facts or even one wrongful act. The Fifth Circuit has held that "it is well established that in a proper case ***one wrongful act*** may be the subject of ***two or more separate and distinct causes of action***." *Household Goods Carriers' Bureau v. Terrell*, 452 F.2d 152, 157 (5th Cir. 1971). As a result, res judicata is not implicated by successive suits when "the invasion of ***two separate and distinct primary rights*** has resulted ***from the same misconduct***." *Hayes v. Solomon*, 597 F.2d 958, 983 (5th Cir. 1979) (internal quotations omitted). In considering implicated rights for res judicata purposes, "different primary rights are at stake where the substance of the two claims differ." *Heller v. Plave*, 743 F. Supp. 1553, 1567 (S.D. Fla. 1990).

For example, in *Terrell*, the En Banc Fifth Circuit declined to make a finding of res judicata where a letter was the subject both a libel suit and a subsequent antitrust suit because "personal right not to be subjected to libelous statements" is separate and distinct from the "business right to enter competition freely." *Household Goods Carriers' Bureau v. Terrell*, 452 F.2d 152, 157 (5th Cir. 1971). Similarly in the case as hand, Shwartz's individual right to not be defrauded of his personal assets is not the same as his corporation's business contractual rights. These rights are "two separate and distinct primary rights" and "two or more separate and distinct causes of action" that do not preclude one another under the doctrine of res judicata. *Hayes*, 597 F.2d at 983; *Terrell*, 452 F.2d at 157.

12

### c. Shwartz was unaware of Khodr's fraudulent behavior until the pendency of the Eastern District of Louisiana case.

Furthermore, courts recognize an exception to the doctrine of res judicata where the plaintiff was not aware of the defendant's fraudulent behavior in order to include it in a prior action. As the Fourth Circuit has explained, "An exception to . . . the application of res judicata rules is found in cases where *fraud, concealment, or misrepresentation have caused the plaintiff to fail to include a claim in a former action*." *Harnett v. Billman*, 800 F.2d 1308, 1313 (4th Cir. 1986), citing Restatement (Second) of Judgments § 26 comment j.  As a result of this exception, "[a] defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier action because of the defendant's own fraud." Restatement (Second) of Judgments § 26 (1982).

This exception is clearly applicable to the instant matter as Khodr concealed his fraudulent behavior for nearly five years throughout prior litigation until he finally asserted ownership rights of the Camellia Grill intellectual property. Shwartz or CGH could not affirmatively plead a claim of fraud in the state court because they were unaware it existed. Based upon this fraud exception to res judicata, Khodr cannot now attempt to bar a claim that was omitted from prior litigation due to Khodr's concealment of his fraudulent conduct.

### 2. Khodr has also failed to establish the elements of collateral estoppel.

Similarly, Khodr attempts to argue that Shwartz's claims are barred by collateral estoppel. The Fifth Circuit has established that collateral estoppel "precludes a party from litigating an issue already raised in an earlier action between the same parties only if: (1) the issue at stake is *identical* to the one involved in the earlier action; (2) the issue was *actually litigated* in the prior action; and (3) the *determination of the issue* in the prior action was a

13

*necessary part of the judgment* in that action." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 397 (5th Cir. 2004). These factors are clearly inapplicable from the face of the Complaint.

Again, Khodr attempts to suggest that the instant lawsuit requires a reinterpretation of the Bill of Sale and contractual parol evidence. *See*, Doc. 16, p. 14 ("Shwartz's request that this Court **interpret the Bill of Sale in light of parol evidence** is identical to Shwartz's request to the Eastern District of Louisiana and the Fifth Circuits to consider parol evidence when interpreting the Bill of Sales.") However, as established above, the instant matter concerns **fraud.** Neither the Eastern District of Louisiana nor the Fifth Circuit made a finding regarding fraud or the fraud-based claims that Shwartz is now alleging. Both courts only excluded parol evidence in the interpretation of a contract.

Prongs one and two for establishing collateral estoppel require an **identical issue**, which was **actually litigated** in the prior action. Fraud was not raised and certainly not litigated in the prior actions discussed by Khodr, and he can point to no instance in which it was, which is why he uses a strawman argument focusing on parol evidence instead. As a result, Khodr's arguments attempting to misconstrue Shwartz's claims as contractual in nature and surrounding the issue of parol evidence fail to establish that the instant fraud claims are barred by collateral estoppel.

**C. Shwartz has standing to bring the instant lawsuit.**

Khodr also challenges Shwartz's standing as an individual to bring this lawsuit. In advancing this argument, Khodr narrowly focuses on the Marks, rather than the variety of both individual and corporate assets involved in this transaction. In actuality, Shwartz owned 100% of all assets involved either individually or through his pass-through "S" corporation, of which he is the sole shareholder and president. Particularly, Shwartz individually owned the real estate,

housing the original Camellia Grill located at 626 South Carrollton Ave., New Orleans, Louisiana. As a result of Khodr's fraud, Shwartz, was deprived both individual and corporate assets.

In order to have standing to sue under Article III, the Fifth Circuit has held that a plaintiff must have, (1) "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; (2) that there is a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision." *Hosein v. Gonzales*, 452 F.3d 401, 403–04 (5th Cir. 2006). "Standing clearly exists when a plaintiff *alleges direct economic harm*." *Id.* at 404.

Shwartz clearly has suffered "direct economic harm" sufficient to establish individual standing. *Id.* At the first Grenada negotiation on June 23, 2006, Khodr fraudulently induced Shwartz, as an individual, to heavily discount his real property as Shwartz was operating under Khodr's misrepresentation that the permanent ownership of the IP was not included in the real estate transaction but was rather subject to the Licensing Agreement. Shwartz's original price for the real estate was $750,000.00, but Khodr demanded a price reduction. Shwartz agreed to a revised price of $500,000.00, a 33% discount based upon Khodr purchasing the License, being a use agreement and thus not a sale of any IP. As a result, Shwartz individually entered a contract to sell his real property at a significantly lower price than he could have realized absent Khodr's fraud. This devaluation of assets results in clear economic injuries that are distinct to Shwartz, rather than merely his corporation, and confer individual standing.

Furthermore, although the basis for Shwartz's fraud is that when negotiating in Grenada in 2006, Khodr misrepresented his intentions as to the License and Shwartz's/CGH's ownership

of the Marks, it was Shwartz's personal real estate and Bill of Sale transactions, both of which contracts were requested of and executed by Shwartz in Grenada, which Khodr used to implement the fraud to subsequently usurp Shwartz's assets.

Khodr primarily applies an inapplicable, unbinding case from a United States District Court of Washington and subsequently the Ninth Circuit in advancing his argument that Shwartz does not have individual standing to sue. *Woods View II* involves a negligence and tortious interference action surrounding the eminent domain of property owned by a LLC. See *Woods View II, LLC v. Kitsap Cty.*, No. C10-5114BHS, 2011 WL 2491594 (W.D. Wash. June 22, 2011), aff'd, 484 F. App'x 160 (9th Cir. 2012) and *Woods View II, LLC v. Kitsap Cty.,* 484 F. App'x 160 (9th Cir. 2012). *Page v. Clark* is much more factually applicable to the instant matter. 195 N.Y.S. 529 (Sup. Ct. 1922). In *Page*, the court addressed individual standing in a case where the owner of a majority of the stock in company was fraudulently induced to cast a vote, resulting in the loss of her stock. *Id.* at 29. The court held that the plaintiff had standing to bring suit in her individual capacity as defendants conspired to defraud her, as an individual, of her stock by fraudulently inducing her to vote for a resolution of bankruptcy, which she would not otherwise have done. *Id.* The court determined that "the defendants conspired to defraud [the plaintiff], and not the corporation." *Id.* As a result, "[t]he action is not a representative one, but is brought by the plaintiff to recover her individual damage." *Id.*

Similarly, in the case at hand, Shwartz, as an individual, was defrauded by Khodr. In their negotiations as two individuals, Khodr made fraudulent misrepresentations to Shwartz causing him to involve a variety of his assets, both individually and corporately owned. As a result, Shwartz ***individually signed*** the Bill of Sale. (See Bill of Sale, attached to the First Amended

16

Complaint, as Exhibit "H.") Accordingly, the instant action is not a representative, derivation action, as alleged by Khodr, but rather an action by Shwartz to recover his individual damages. The devaluation of Shwartz's real property due to Khodr's fraud is distinct from any alleged injury to Shwartz's corporation and provides him with standing to sustain this action in his individual capacity.

Shwartz maintains that he has suffered redressable economic injuries that provide him with adequate standing to bring suit as an individual. However, in the alternative, Shwartz respectfully requests leave to amend his Complaint to join CGH as a plaintiff. See Second Amended Complaint, attached as Exhibit "H."

In considering amendments to pleadings, Federal Rule of Civil Procedure 15(a) states that "leave shall be freely given when justice so requires." See e.g. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607–08 (5th Cir. 1998) (finding that Rule 15(a) "evinces a bias in favor of granting leave to amend."). When deciding a motion to amend under Rule 15, the Court considers various factors including: undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Considering the applicable factors, this cause would not suffer undue delay as it is in the beginning stages of litigation. Similarly, Khodr will not be unduly prejudiced if the proposed amendment is permitted. Secondly, Shwartz is not acting in bad faith or with dilatory motive. Finally, this amendment, by Khodr's own argument, has legal basis and would not be futile. As a result, if this Court finds that Shwartz lacks standing as an individual (which is denied), Shwartz respectfully requests that this Court grant him leave to amend his Complaint to join CGH as a

plaintiff.

**D. Shwartz's claims are not time-barred.**

Khodr attempts to attack Shwartz's five fraud-based claims using a statute of limitations theory. Khodr alleges that the three-year statute of limitations has elapsed, barring these claims. Khodr erroneously bases this argument on a May 20, 2013 letter from Irl Silverstein, which, when read in its entirety, was clearly addressing various breaches of the Licensing Agreement by Khodr. See Exhibit "E." As noted by Shwartz in the First Amended Complaint, the earliest point at which Shwartz became aware of Khodr's potential fraudulent behavior was June 11, 2013; however, Khodr did not allege the Bill of Sale gave him ownership of the IP until August 6, 2013, in reply brief concerning HDLC matter. *See*, Doc. 4. Even applying the earlier of these two dates, June 11, 2013, Shwartz's Compliant, which was filed June 8, 2016, falls within the three-year statute of limitations and is not barred.

As correctly noted by Khodr, Mississippi procedural law is applicable to this matter under the *Erie* Doctrine. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Pursuant to Mississippi Code Ann. § 15-1-49, "(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after." This three-year limitations period is applicable to all five tortious claims in Shwartz's Amended Complaint: 1) common law fraud; 2) conversion; 3) fraudulent misrepresentation; 4) negligent misrepresentation; and 5) unjust enrichment. Shwartz will not address a sixth claim for intentional infliction of emotional distress or its subsequent statute of limitations as this claim was not plead in the Amended Complaint and was strictly invented by Khodr.

Generally, a statute of limitations "commences upon discovery of an injury, and

18

discovery is an issue of fact to be decided by a jury when there is a genuine dispute." *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009). In tort cases, "a statute of limitations 'begins to run when all the elements of a tort, or cause of action, are present.'" *Fletcher v. Lyles*, 999 So. 2d 1271, 1277 (Miss. 2009), quoting *Caves v. Yarbrough*, 991 So. 2d 142, 147 (Miss. 2008). As a result, plaintiffs are "without any cause of action until they suffer[] damages." *Id.* In particular, "a fraud claim accrues . . . upon the consummation[2] of the fraud." *Id.* at 692–93.

In this case, the consummation of Khodr's fraud and damages to Shwartz arguably did not occur until Khodr's company Uptown Grill sued Shwartz, Camellia Grill, Inc., and CGH for the enforcement of the Bill of Sale as a transfer of ownership of the Marks on December 3, 2013. However, Shwartz first became aware of Khodr's claim of ownership through Khodr's August 6, 2013 reply brief in the HDLC matter. At no point prior to this brief had Khodr outright asserted his ownership of the Camellia Grill intellectual property. As a result, Shwartz had no notice of his fraudulent conduct until August 6, 2013, and the fraud was not actually consummated until December 3, 2013. As all five of Shwartz's instant claims are based on Khodr's fraud, these dates are applicable to them, as well. As a result, Shwartz's June 8, 2016 filing of the instant lawsuit is within the three-year statute of limitations.

Khodr misconstrues the May 20, 2013 letter from Irl Silverstein in his attempt to assert that Shwartz's claims fall outside the statute of limitations. This letter does not address any trademark ownership claims by Khodr or even mention the Bill of Sale. It is merely License Agreement oversight letter, outlining a variety of Khodr's ongoing breaches through the

---

[2] "'Consummation' is defined as '[t]he act of consummating: fulfillment.'" Wilbourn v. Equitable Life Assur. Soc. of the U.S., 998 So. 2d 430, 438 n.14 (Miss. 2008), quoting Webster's II New College Dictionary 242 (3d ed. 2001).

"Camellia Grill" Facebook page. Particularly, this letter was correcting the "Camellia Grill" Facebook page moderator's use of the phrase "previous owner" in referring to Shwartz, and "new owner" in referring to Khodr. This correction was necessary because Khodr was simply a licensee of the Marks, **and the Licensing Agreement had been affirmed as terminated** by Louisiana Fourth Circuit Court of Appeals mere weeks before on May 8, 2013. At this point, the License Agreement was the only legal document that had been subject to litigation, and Khodr had not made any ownership claims to the Marks. As a result, the May 20, 2013 letter does not represent knowledge by Shwartz of Khodr's fraud and certainly does not constitute the consummation of fraud or the element of damages, which is shared by all five of Shwartz's fraud-based claims. However, if genuine dispute as to this fact exists, it was one to be decided by a jury. *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (Miss. 2009).

     **E.  Unjust enrichment is an available cause of action in this matter.**

     Khodr is correct that unjust enrichment applies only where a legal contract does not exist. However, the basis of Shwartz's claims is fraud. A contract entered as a result of fraudulent representations is not a legal contract, but rather is voidable by the defrauded party. *Gardner v. Little*, 755 So. 2d 1273, 1276 (Miss. Ct. App. 2000). Furthermore, Mississippi courts "have always, in proper cases, been prepared to 'hold a person to a representation made or a position assumed where otherwise *inequitable consequences would result* to another who, having the right to do so under all of the circumstances of the case, has in good faith relied thereon and been misled to his injury.'" *Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 370–71 (Miss. 2013) (discussing unjust enrichment in the case of a void express contract). This case is applicable in the instant situation where Shwartz relied upon Khodr's fraudulent

misrepresentations, resulting in clearly inequitable results. As a result, Shwartz should be permitted to pursue his unjust enrichment claims.

## CONCLUSION

As established above, Shwartz's fraud claims are not barred by either res judicata or collateral estoppel as they have never been previously litigated and involve a different right and duty than the prior claims. Additionally, Shwartz's claims are not barred by the three-year statute of limitations based upon the date Khodr's fraud was consummated. Shwartz also maintains that he has sufficient standing as an individual to maintain this action, but in the alternative, requests leave to file his Second Amended Complaint, joining Camellia Grill Holdings as a plaintiff. For the foregoing reasons, Plaintiff Michael Shwartz prays that this Court deny the Defendant's Rule 12(b)(6) Motion to Dismiss.

**RESPECTFULLY SUBMITTED,** this the 8th day of September, 2016.

*/s/ Stephan L. McDavid*
Stephan L. McDavid, MSB No. 8380
MCDAVID & ASSOCIATES, PC
1109 Van Buren Avenue
Post Office Box 1113
Oxford, Mississippi 38655
Telephone: (662) 281-8300
Facsimile: (662) 281-8353
Email: smcdavid@mcdavidlaw.com
*Attorney for Plaintiff*

21

## CERTIFICATE OF SERVICE

I, Stephan L. McDavid, hereby certify that on this day I caused the foregoing to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to all registered attorneys.

SO CERTIFIED this, the 8th day of September, 2016.

.

/s/ Stephan L. McDavid
Stephan L. McDavid, MSB No. 8380
MCDAVID & ASSOCIATES, PC
1109 Van Buren Avenue
Post Office Box 1113
Oxford, Mississippi 38655
Telephone: (662) 281-8300
Facsimile: (662) 281-8353
Email: smcdavid@mcdavidlaw.com
*Attorney for Plaintiff*