**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**MICHAEL L. SHWARTZ**                                                                 **PLAINTIFF**

**VS.**                                            **CIVIL ACTION NO. 4:16-CV-115-MPM-JMV**

**HICHAM KHODR**                                                             **DEFENDANT**

**ORDER**

This cause comes before the court on the motion of defendant Hicham Khodr, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss this action for lack of personal jurisdiction over him, or to dismiss and/or transfer pursuant to Fed. R. Civ. P. 12(b)(3) and/or 28 U.S.C. § 1404(a). With regard to the venue issue, defendant raises two alternative arguments, the first being that the Northern District of Mississippi represents an improper venue within the meaning of 28 U.S.C. § 1391 and the second being that, even assuming that this district represents a proper venue under § 1391, this case should still be transferred to the Eastern District of Louisiana in the interests of justice and for the convenience of the parties, based on § 1404(a). As discussed below, this court concludes that plaintiff has managed to defeat defendant's personal jurisdiction and improper venue arguments but that the unique procedural circumstances of this case make the argument for transferring it to the Eastern District of Louisiana under § 1404(a) a compelling one. This court will therefore grant defendant's motion to transfer this action to the Eastern District of Louisiana but deny his motions to dismiss.

In the court's view, there is one basic fact which allows plaintiff to defeat the personal

jurisdiction and § 1391 venue arguments raised by defendant in this case. That fact is that, as defendant concedes, he and his attorneys flew by chartered jet to Grenada, Mississippi on June 23, 2006 and July 11, 2006 to negotiate the sale of the Camellia Grill restaurant located on Carrolton Avenue in New Orleans. These Mississippi negotiations bore fruit, and, on August 9 and 11, 2006, an Act of Cash Sale and Bill of Sale were executed by Shwartz and his companies, Camellia Grill and CGH as Seller, and by Khodr on behalf of his companies, RANO, LLC and Uptown Grill, LLC ("Uptown Grill") as Purchasers, for $490,000 and $10,000 respectively.

The 2006 Bill of Sale, in particular the issue of whether it encompassed only the New Orleans restaurant or whether it also included associated trademarks, has given rise to no less than six separate lawsuits between plaintiff and defendant in state and federal courts in Louisiana. These Louisiana actions were all filed before this one, and this raises obvious concerns about whether this case is barred by *res judicata*. It is well established that *res judicata* "bars the litigation of claims that either have been litigated or should have been litigated or should have been raised in an earlier suit." *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 855 (S.D. Miss. 2012), *aff'd*, 718 F.3d 460 (5th Cir. 2013) (citing *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999)).

While the *res judicata* issues in this case strike this court as being serious ones, they do not negate the fact that defendant's act of flying to Grenada with counsel to negotiate an important business transaction is one which leaves a rather large footprint in this district, for personal jurisdiction and venue purposes. Moreover, granting all reasonable inferences to the allegations of plaintiff's amended complaint, it does appear to raise a plausible connection between the trips to Grenada and the claims asserted therein. In his brief, plaintiff notes that:

> Shwartz advances five district causes of action all stemming from Khodr's fraudulent behavior during contract negotiations in Mississippi, which is [sic] clearly detailed in the First Amended Complaint: (1) common law fraud, (2) unjust enrichment, (3) conversion, (4) fraudulent misrepresentation, and (5) negligent misrepresentation. The common law fraud claim, fraudulent misrepresentation, and negligent misrepresentation claims are all clearly based upon Khodr's fraudulent behavior and misrepresentations to Shwartz during the contract negotiations in Mississippi.

[Plaintiff's brief at 18-19].

Thus, plaintiff alleges that defendant committed fraud and other actionable torts during the Mississippi negotiations, most notably by including language in the 2006 Bill of Sale referring to "trademarks." Plaintiff alleges that this language represented a legal trojan horse of sorts which would later allow defendant to argue that he purchased not only (as plaintiff contends) the New Orleans restaurant, but also trademark rights to the restaurant. Plaintiff claims that the trademark rights were intended to be dealt with solely by a separate License Agreement signed in New Orleans on August 27, 2006, and he further argues that the reference to "trademarks" in the Bill of Sale was merely a "placeholder." [Amended complaint at 14]. While defendant disputes many of the allegations in plaintiff's complaint, this court is required to show deference to them, in ruling upon the instant Rule 12(b)(2) and 12(b)(3) motions. Plaintiff provides a full and persuasive response to defendant's personal jurisdiction and improper venue arguments in his briefing, and these issues seem clear enough that this court will simply note its agreement that the Mississippi negotiations sufficed 1) to create specific personal jurisdiction over defendant under both constitutional principles and under Mississippi's long arm statute, and 2) to establish that "a substantial part of the events or omissions giving rise to the claim occurred" in Mississippi, within the meaning of § 1391.

While the court thus concludes that defendant's motions to dismiss are not well taken, it believes, for the reasons discussed below, that he has a much more compelling argument for transfer based on § 1404(a). Moreover, unlike with the personal jurisdiction and improper venue issues, plaintiff has failed to make a persuasive case as to why this case should not be transferred to the Eastern District of Louisiana in the "interests of justice and the convenience of the parties." A § 1404(a) motion to transfer venue requires a two-part inquiry: (1) whether the action to be transferred might have been brought in the transferee court; and (2) whether considering the convenience of the parties and witnesses and the interest of justice, a transfer is appropriate. *See In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Under federal law, venue is proper: (1) in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction. See 28 U.S.C. § 1391(b). Where a party is able to establish this threshold requirement—that the transferee court lies within a district where the action "might have been brought"—the court must then turn to step two, which requires the court to determine whether the movant has shown the convenience of the parties and witnesses and the interest of justice counsel in favor of transfer. *See Volkswagen I*, 371 F.3d at 203.

4

The Fifth Circuit has held that the determination of convenience relies on a number of public and private interest factors. *See Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include, but are not limited to, (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *See In re Volkswagen of Am., Inc. (Volkswagen II),* 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The public interest factors include, but are not limited to, (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* Importantly, these factors *are neither exhaustive nor exclusive*, and no single factor is dispositive. *Id.* (emphasis added). Moreover, when considering a motion to transfer pursuant to § 1404(a), the plaintiff's choice of forum is generally "highly esteemed" and entitled to great weight, particularly when his choice of forum is his own home state, as in the present case. *Paul v. International Precious Metals Corp.*, 613 F. Supp. 174, 178–79 (S.D. Miss. 1985).

In considering these § 1404(a) factors here, this court initially notes that it is undisputed that Louisiana might have served as a proper venue for this action. That leaves as the determinative § 1404(a) factor whether "considering the convenience of the parties and witnesses and the interest of justice, a transfer is appropriate." As discussed below, this court concludes that the "interest of justice" strongly supports a transfer of this action to the Eastern District of Louisiana, but it will first address the "convenience of the parties" factors, even though some of

5

the non-exclusive factors stated above are arguably less relevant to this case than the interest of justice considerations. In so stating, this court notes that this case presently finds itself in a very unusual procedural posture, in which, before the litigation of the actual claims in this case may proceed, plaintiff will have to surmount what appear to be very serious arguments that his claims should have been raised in prior Louisiana litigation and are thus barred by *res judicata*. Moreover, as discussed below, it seems clear that the Eastern District of Louisiana is in a far better position than this court to accurately determine, at a minimum of expense to the parties, whether the claims asserted in this case are ones which should have been raised in prior litigation.

It appears to this court that some of the specific venue factors quoted above, instructive though they may be, were not designed to deal with a case which finds itself in the unusual procedural posture present here. Having said that, the court does find that many of the private interest factors, such as the relative ease of access to sources of proof, the cost of attendance for willing witnesses and "all other practical problems that make trial of a case easy, expeditious, and inexpensive" do favor transferring this action to the Eastern District of Louisiana. In so stating, this court notes that both parties' arguments regarding the merits of the *res judicata* issue and a related motion for Rule 11 sanctions filed by defendant largely involve their own descriptions and characterizations of the litigation which has already occurred in Louisiana. These descriptions could not be more diametrically opposed. For example, in his Rule 11 motion, defendant argues that:

> Now, Shwartz has filed a new, duplicative, and harassing suit asking this Court to adjudicate issues already adjudicated by the Fifth Circuit and currently pending before the Eastern District of Louisiana. This suit is wholly inappropriate and

> rises to the level of sanctionable activity, particularly in light of the prior duplicative lawsuits filed by Shwartz.

[Defendant's Rule 11 brief at 7]. For his part, plaintiff characterizes himself as being the aggrieved party throughout the Louisiana litigation, writing that "Khodr was and is the cause of every relevant suit, either as the plaintiff or defendant, as evidenced by Shwarz's detailed litigation chronology below." [Plaintiff's Rule 11 brief at 2].

The litigation chronology set forth in plaintiff's briefing is, as promised, quite detailed, and this court will not quote from it at any length. Typical in this regard, however, is plaintiff's description of part of the federal court litigation in the Eastern District of Louisiana, which he characterizes as follows:

> In the "current Louisiana federal suit," Shwartz does not deviate from Khodr's translation of the basic results of that litigation, but again, Khodr attempts to abuse the issue of his Bill of Sale, which in the end was deemed to transfer the Marks pertaining to the original Carrolton Avenue New Orleans location. Not once has Shwartz intimated that he is attacking either federal court ruling in seeking the reinstatement of any lost assets through his Mississippi complaint. As a result, Shwartz does not attempt to re-litigate the closed case regarding the permanent transfer of the Carrolton Avenue Marks. Shwartz filed his instant complaint based upon the fraud, resulting in the transfer of his real property and the execution of the License Agreement. Khodr obviously possessed a covert agenda while negotiating (in Grenada) that Swartz/CGH would always own the involved Marks, and as such, the nebulousness as to the intent emanates exclusively from Khodr.

[Plaintiff's brief at 13].

It is thus apparent that a resolution of the *res judicata* and sanctions issues in this case will require extensive consideration of the complex litigation which has already occurred in Louisiana. Needless to say, the Eastern District of Louisiana is far more familiar with the litigation which has occurred there than this court is. This means that laying a groundwork for

7

consideration of the *res judicata* issues in this case will be far more time-consuming if it is performed in this court rather than in Louisiana federal court. This court regards this fact as significant for the private interest factors quoted above. Simply stated, neither party will need to incur expense in establishing facts which are already known to the Eastern District of Louisiana, and transferring this case there will, without question, make the litigation of these issues "eas[ier], [more] expeditious, and inexpensive." *Id.*

This court cannot discern a serious argument otherwise. In so stating, this court notes that oral argument has been sought with regard to the *res judicata* and Rule 11 issues, and, if it were to keep this case, it would almost certainly grant that request. This would require the parties and their attorneys to incur great expense in traveling to this court so that they might educate it regarding matters which are already known to the Eastern District of Louisiana. If, however, the Eastern District of Louisiana were to decide these issues, then it could simply choose to refer the motion to the District Judge who handled the federal action, namely Judge Jane Triche-Milazzo. Moreover, there is clearly easier access to the sources of relevant proof regarding the Louisiana litigation in that state than if these matters were to be addressed in a hearing before this court. Thus, the § 1404(a) private interest factors quoted above clearly favor transferring this action to the Eastern District of Louisiana.

In considering the public interest considerations, it appears that some of the factors, such as "the administrative difficulties flowing from court congestion" and "the local interest in having localized interests decided at home" are essentially neutral in this case. It does appear, however, that some of the public interest factors are motivated by policy considerations which support defendant's motion to transfer. For example, the public interest factor supporting

8

transfer to the court with the greatest "familiarity . . . with the law that will govern the case" would likewise seem to apply in this case, since the Eastern District of Louisiana has unique knowledge of facts which would assist it in accurately resolving the *res judicata* issues. Moreover, the public interest factor which seeks to avoid "unnecessary problems of conflict of laws or in the application of foreign law" would seem to support avoiding a situation where both this court and Judge Triche-Milazzo make potentially conflicting interpretations regarding the nature of the litigation which has occurred in Louisiana. While this court thus believes that both the public and private interest factors support transfer, it does appear, as stated previously, that some of them were not designed to deal with a case which finds it in the unique procedural situation present here. Moreover, this court notes once again that the stated private and public interest "factors are neither exhaustive nor exclusive," and this gives courts greater flexibility in tailoring the consideration of these factors to the needs of the cases before them.

That brings this court to the fact that, once again, it is required to consider both "the convenience of the parties and witnesses" and "the interest of justice" in determining whether transfer is appropriate. In addressing the "interest of justice" factor, there is, arguably, no more fundamental consideration than ensuring that important legal issues are resolved *correctly*. Certainly, this court could conduct hearings regarding what transpired in the litigation before Judge Triche-Milazzo, and, at the cost of considerable time and expense, it could obtain a clearer understanding of the nature of that litigation than it has today. Inevitably, however, any such understanding would fall short of that enjoyed by Judge Triche-Milazzo, by virtue of having actually heard the case, both initially and on remand, for a period of years. It should be apparent that a court gains knowledge in actually *hearing* a case which can not be fully replaced by even

9

extensive hearings at which each party provides their own self-serving characterization of the prior litigation. Indeed, this court rather strongly suspects that Judge Triche-Milazzo has already formed opinions regarding the good faith, or lack thereof, of the litigants in this case, based upon prior experience in dealing with them.

This court's conclusion that the "interest of justice" supports transferring this action to the Eastern District of Louisiana is based partly upon the arguments which plaintiff has raised in this case. This court has particular concerns regarding the manner in which, in his complaint and briefing, plaintiff seeks to use certain arguments used by defendant in the Louisiana litigation as an apparent basis for his claims in this case. Prior to addressing these arguments raised by plaintiff, this court will first briefly discuss recent federal court litigation on this issue. In a March 2016 decision, the Fifth Circuit affirmed Judge Triche-Milazzo's ruling that the Bill of Sale conveyed ownership of the trademarks in the New Orleans restaurant. In so concluding, the Fifth Circuit wrote that:

> To the contrary, the Bill of Sale unambiguously transfers ownership of the trademarks "within or upon" the Carrollton Avenue location. . . . The unambiguous transfer of the Carrollton Avenue location trademarks to Uptown Grill does not lead to an objectively absurd result. Though the $10,000 purchase price may seem low for all of the property transferred, a business decision that may be unwise, imprudent, risky, or speculative is not necessarily "absurd." . . . We thus decline the Shwartz parties' invitation to consider parol evidence such as the License Agreement in interpreting the Bill of Sale.

*Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 258 (5th Cir. 2016).

The Fifth Circuit concluded in *Uptown Grill*, however, that Judge Triche-Milazzo had prematurely addressed the issue of whether the Bill of Sale granted defendant *nationwide* trademark rights to the restaurant. As to this broader issue, the Fifth Circuit found that "[t]he

10

parties have never litigated the proposition that because of the Bill of Sale, the License Agreement did not cover the use of Camellia Grill marks apart from the Carrollton Avenue location." *Shwartz*, 817 F.3d at 259. The Fifth Circuit accordingly reversed the portion of Judge Triche-Milazzo's ruling which interpreted the Bill of Sale as establishing nationwide rights over the restaurant's trademarks, and it remanded for further proceedings on this issue. *Id.* at 260.[1]

It thus seems clear that plaintiff won at least a partial victory before the Fifth Circuit, with regard to defendant's efforts to have himself declared the owner of nationwide trademark interests in the restaurant. In his complaint and briefing in this case, however, plaintiff cites the *arguments made by counsel* at various stages of the Louisiana litigation in support of his fraud claims in this case. For example, plaintiff alleges in his complaint that:

> Khodr continues to argue for permanent rights under the Bill of Sale, up to and including in his Fifth Circuit oral arguments. As well, in those Fifth Circuit arguments, Khodr argued that the License should morph from a contract entailing only a use into a situation where Khodr (paying no consideration) owns the Marks for the territory outside the original location.

[Amended complaint at 25]. In the court's view, plaintiff's reliance upon arguments of counsel made in the Louisiana litigation is problematic on its merits, but it also strengthens the "interest of justice" argument in favor of having the Eastern District of Louisiana decide these issues.

There are obvious privilege concerns with the use of such arguments by counsel in a separate tort action, and this court sees a substantial risk that litigation could spread in virus-like fashion if the arguments made by counsel in one case were relied upon as an even partial basis for an entirely new action, in a different court. That is not to say that such a tactic might never be

---

[1]This court notes that, among the issues the Fifth Circuit directed the district court to consider on remand were the "litigation tactics" of the parties, *see id.* at 258, and these same tactics are certainly relevant to the *res judicata* and Rule 11 issues in this case.

11

appropriate, but it is clearly concerning. In the court's view, counsel are, generally speaking, entitled to "swing for the fences" in making their arguments in a particular case, and, if those arguments prove to be overly ambitious, then the proper remedy is to deny them the relief they seek.

It appears, based upon this court's understanding of the Louisiana litigation, that Judge Triche-Milazzo accepted defendant's arguments regarding a broader interpretation of the trademark rights conveyed by the Bill of Sale but that the Fifth Circuit concluded that this portion of her ruling was in error and that any trademark rights conveyed should be limited to the New Orleans restaurant. The Fifth Circuit then remanded the case specifically for consideration of any nationwide trademark interest owned by defendant. It certainly seems arguable that this hearing on remand, and not the complaint in this case, is the proper format in which to address any arguments regarding the broader trademark issue. This court therefore regards the manner in which plaintiff uses arguments made by defendant in the litigation before Judge Triche-Milazzo in this lawsuit to be concerning. While this court does not rule out the possibility that such arguments might be appropriate here, it clearly seems preferable, in the interest of justice, for those arguments to be made before Judge Triche-Milazzo. In the court's view, she is clearly in the better position to ascertain whether, by making this argument in the case before her, defendant potentially opened himself up to additional liability in this case.

In a similar vein, this court has concerns regarding whether plaintiff's fraud claim in this case represents, as defendant argues, an attempt to re-litigate the Bill of Sale issues which he already lost in the Louisiana federal litigation. As noted above, one issue which Judge Triche-Milazzo and the Fifth Circuit did agree on is that parol evidence, such as the License Agreement,

should not be used in interpreting the terms of the Bill of Sale. There is, quite arguably, considerable overlap between plaintiff's argument before Judge Triche-Milazzo that the Bill of Sale did not grant trademark rights because those rights were set forth in the Licence Agreement and his argument here that the Bill of Sale's reference to "trademarks" represented an attempt by defendant to defraud him. Plaintiff's fraud claims do raise the stakes as far as making allegations regarding defendant's state of mind in entering into the 2006 deal, but this court certainly wonders whether plaintiff could, and should, have thought to make these arguments before Judge Triche-Milazzo or at some other point in the decade which has passed since the deal was consummated. Given Judge Triche-Milazzo's far superior knowledge of the Louisiana litigation, she is in a much better position to resolve these issues correctly, thereby advancing the "interest of justice."

In light of the foregoing, this court believes that both the "interest of justice" and the "convenience of the parties" support granting defendant's § 1404(a) motion to transfer. As defendant argues persuasively in his brief:

> Applying these factors, it is in the interest of justice and the convenience of the parties and witnesses for this matter to be transferred to the Eastern District of Louisiana, a court of proper jurisdiction and venue. Foremost, that these factors are present is evident by the current litigation pending in the Eastern District of Louisiana *which has addressed and is currently addressing the same issues raised by Shwartz*. *** Considering the type of relief sought by Shwartz, this case is particularly suited for transfer to the Eastern District of Louisiana. Shwartz is asserting claims based on discussions which pre-date the signing of several contracts. The Eastern District of Louisiana has analyzed in detail those acts leading up to the execution of the contracts, the contracts themselves, and the impacts of the contracts. To the extent that Shwartz relies on any documents in this case, the contracts have already been provided to the Eastern District of Louisiana. Thus, no increase in burden exists. Indeed, the Eastern District of Louisiana is excruciatingly familiar with the long history of interactions between Shwartz and Khodr. Khodr recognizes the weight that various courts give to a

13

> plaintiff's choice of forum. It is anticipated that Shwartz will argue as much. However, Shwartz has chosen Louisiana forums and venues numerous times in the adjudication of these very issues. It cannot now be said that litigating in Louisiana should be trumped by Shwartz's desire to have his home-town forum undo the decisions made by the Eastern District of Louisiana and the Fifth Circuit.

[Defendant's brief at 24-25].

This court regards these as rather compelling arguments in favor of § 1404(a) transfer, and plaintiff has failed to even directly confront them in his briefing. In opposing § 1404(a) transfer, plaintiff relies primarily upon Judge Lee's 1988 decision of *Rippy v. Crescent Feed Commodities, Inc.*, 710 F. Supp. 1074 (S.D. Miss. 1988). In *Rippy*, a Mississippi farmer brought a products liability suit against a Louisiana producer in Mississippi court for the death of his cattle due to contaminated feed. *Id.* at 1076-77. The defendant in *Rippy* argued for the dismissal or transfer of the plaintiff's Mississippi action due to the pendency of a Louisiana action, in which he was maintaining a similar claim for redhibition. *Id.* at 1080.

This court accepts, as emphasized in *Rippy*, that the mere pendency of a related action in another federal court does not require it to transfer this action to that court. Even a cursory review of the facts of this case and those in *Rippy* makes it clear, however, that there is no comparison in the extent to which issues relevant to the respective lawsuits had already been litigated in Louisiana at the time transfer was sought. Indeed, in describing the Louisiana litigation in *Rippy*, Judge Lee wrote that:

> Following the death of his cattle, plaintiff stopped payment on the check given in payment for the grain screening pellets. Crescent, prior to plaintiff's bringing suit in this court, instituted an action against Rippy in a Louisiana state court seeking recovery on open account. In defense of that suit, plaintiff alleged redhibition, a claim that the product was defective, and that payment was therefore not due.

*Id.* at 1076, n. 1. It is clear from Judge Lee's opinion that plaintiff's cattle in *Rippy* died at some

point in 1987, and he denied the motion to transfer in a 1988 order. *Id.* at 1076. It thus seems clear that any litigation which had occurred in Louisiana in *Rippy* was of a very limited nature, and this stands in very sharp contrast to the procedural history of this case.

Plainly, this case does not merely involve actions proceeding more or less simultaneously in different federal courts, but, rather, a federal action relating to issues which have already been extensively litigated in another court. In this case, plaintiff will first have to get past defendant's motion to dismiss on grounds of *res judicata* before the substantive merits of his claims are considered. Given the very extensive litigation was has occurred in Louisiana, it seems likely that the Louisiana district court will closely scrutinize plaintiff's decision to file his fraud claims at such a late date. In his arguments in favor of § 1404(a) transfer, defendant makes a compelling case that Judge Triche-Milazzo is best positioned to decide these issues, and, by simply relying upon a clearly distinguishable *Rippy* decision, plaintiff has failed to directly confront these arguments. *Rippy*'s inapplicability aside, plaintiff never truly responds to the basic thrust of defendant's § 1404(a) arguments, quoted above, that the Eastern District of Louisiana's experience in dealing with the complex and difficult facts in this case renders it a much better forum to hear it, in the interests of justice and for the convenience of the parties. This court believes that plaintiff has failed to do so because there is no effective response to make to this argument, since it is undisputably true.

This court notes that an additional argument which plaintiff does *not* make is that transferring this action to Louisiana under § 1404(a) would result in an adverse change in the substantive law. Plaintiff's failure to make this argument is appropriate, since the U.S. Supreme Court has held that when a defendant seeks a transfer under § 1404(a), a change of venue should

15

merely represent a change of courtrooms, not accompanied by a change in the applicable state law, and the transferee court is obligated to apply the state law that would have been applied if there had been no change of venue. *See Van Dusen v Barrack,* 376 US 612, 84 S Ct 805 (1964). In this vein, the Supreme Court has similarly observed that although "a court ordinarily must apply the choice-of-law rules of the State in which it sits[,] ... where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred." *See also Tigert v. American Airlines*, 390 Fed. Appx. 357, 361 (5th Cir. 2010)("A transfer under § 1404(a), in other words, does not change the law applicable to a diversity case.").

It is unclear to this court whether Mississippi's choice-of-law rules would be more favorable to plaintiff than those of Louisiana, but, if so, then plaintiff will presumably have preserved his right to seek the benefit of those Mississippi rules by filing suit in this district.[2] If ensuring that Mississippi law applies to his claims was plaintiff's intent in filing suit here, then he may regard this court's ruling today as a partial, or even total, victory. If, however, plaintiff believes that he stands a greater chance of persuading this court of his version of what transpired in the litigation before Judge Triche-Milazzo than he would of persuading her personally, then he

---

[2]In so stating, this court merely notes its understanding of the law in this context, in the absence of briefing from the parties on this issue. If defendant has some argument that Mississippi's choice-of-law rules should not apply to the claims in this case, then he may, of course, raise that argument before Judge Triche-Milazzo. Defendant argues that a forum selection clause makes Louisiana law applicable here, and it may (or may not) be the case that this court would have applied Louisiana law even if it had kept this case. This court offers no opinion regarding whether or not this is true. Rather, this court simply notes that, under its understanding of the law, a § 1404(a) transfer should not impact the choice-of-law analysis in this regard. At any rate, this court merely notes this issue parenthetically, and it does not base its transfer ruling on it.

will likely regard this ruling today as a defeat. This does not strike this court as being an undesirable result. Regardless, it is abundantly clear to this court that Judge Triche-Milazzo is better positioned to decide the issues relevant in this case and that the litigation of these issues before her would be less time-consuming and more convenient for the parties than if these issues were to be litigated in this court. This court will therefore grant defendant's § 1404(a) motion to transfer.

It is therefore ordered that defendant's § 1404(a) motion to transfer is granted, and this case is hereby transferred to the Eastern District of Louisiana. Defendant's Rule 12(b)(2) and 12(b)(3) motions to dismiss for lack of personal jurisdiction and/or improper venue are denied.

So ordered, this, the 19th day of January, 2017

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**